COMMONWEALTH of Pennsylvania, Appellee,

v.

Edward BISHOP, Appellant.

Superior Court of Pennsylvania.

Submitted July 26, 1999.

Filed Nov. 24, 1999.

Allan L. Sodomsky, Reading, for appellant.

Adrienne Duvall, Asst. Dist. Atty., Norristown, for Com., appellee.

Before JOHNSON, JOYCE and HESTER, JJ.

HESTER, J.:

¶ 1 Edward Bishop appeals from the judgment of sentence of ten to twenty years imprisonment entered on December 17, 1998 following his conviction by a jury of involuntary deviate sexual intercourse, aggravated indecent assault, indecent exposure, endangering the welfare of a child, and corruption of minors. Appellant presents numerous allegations of trial counsel ineffectiveness, prosecutorial misconduct, and trial court error. We affirm.

¶ 2 The trial court aptly summarized the following facts from the record.

On October 26, 1997, M.B., the five year old female victim, was being watched by the Defendant, her 59 year old step-grandfather, while her mother spent the day at the hospital with her mother, the Defendant's wife. M.B. testified that the Defendant asked her if she wanted to play a "secret game." As part of this "secret game," the Defendant digitally penetrated her vagina, licked her vagina, touched her buttocks and encouraged her to touch his penis and buttocks. He told her not to tell anyone of their secret game.

When M.B.'s mother returned to the Defendant's home, M.B. mentioned that they had played a secret game. The Defendant immediately told M.B. to be quiet. After returning to their home, M.B. was coaxed by her mother to share the "secret game" with her. M.B. then told her mother the nature of the secret game. Immediately thereafter, mother called her boyfriend and M.B.'s father. M.B. repeated the story to her father.

Later that evening, mother took M.B. to the Limerick Police Department where M.B. told the same "secret game" story, but did not mention licking. Thereafter, M.B. was taken by her mother to the Pottstown Memorial Medical Center Emergency Room for an examination. The Emergency Room physician, Dr. Victorio Cinco, testified that he examined M.B. and that she showed no obvious signs of injury.

On November 17, 1997, M.B. repeated the story to Detective Katherine Hart of the Montgomery County District Attorney's Office. M.B. was consistent in the details of the sexual assault when speaking with Detective Hart.

On October 13, 1998, Dr. Steven Shapiro, an expert in the area of pediatric and child sexual abuse, conducted an independent examination of M.B. to address the 'discordance' he found in the medical records. Pursuant to that examination, Dr. Shapiro testified that there was scarring on M.B.'s hymen which was consistent with the details she gave of the Defendant's digital penetration. He testified that such penetration would be painful to a five year old girl. He also noted an ammonia irritation around M.B.'s vaginal area most likely caused by scar tissue deflecting urine back into the vaginal vault.

Following the Preliminary Hearing, M.B. approached her mother and said that she was lying about the incident. M.B.'s mother spoke with her about the importance of telling the truth. M.B. responded that she was only teasing about not telling the truth because she was afraid to get her Pop–Pop (Defendant) in trouble. Mother reported this to the Assistant District Attorney and to Detective Hart who reinterviewed M.B. to verify the truthfulness and accuracy of the information originally given.

Trial Court Opinion, 3/9/99, at 5–8 (footnotes omitted).

¶ 3 Based upon the above evidence and testimony, Appellant was convicted as charged. A pre-sentence report was ordered, and sentencing was set for December 17, 1998. The court sentenced Appellant to ten to twenty years imprisonment followed by five years probation. This appeal followed.

¶ 4 Appellant presents issues that span two pages for review. First, he cites to six instances in which he claims trial counsel was ineffective. Next, he argues that the

prosecutor made an inappropriate comment during closing argument. Finally, he asserts that the trial court erred in finding that the weight of the evidence was sufficient to support his convictions.

¶ 5 Initially, we address Appellant's allegations concerning the effectiveness of trial counsel.

The law presumes that trial counsel was effective, and Appellant has the burden of proving otherwise. *Commonwealth v. Baez*, [554 Pa. 66] 720 A.2d 711, 733 (Pa.1998). In order to prove that he was rendered ineffective assistance of trial counsel, Appellant must demonstrate that the underlying claim is of arguable merit, that his counsel had no reasonable basis for proceeding as he did, and that he was prejudiced by his counsel's ineffectiveness (i.e., there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness). *See Commonwealth v. Craver*, 547 Pa. 17, 22, 688 A.2d 691, 693–94 (1997) (citations omitted); *Commonwealth v. Howard*, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994).

*Commonwealth v. Lopez*, 559 Pa. 131, ——, 739 A.2d 485, 494 (1999).

¶ 6 Allegations of ineffectiveness are not self-sustaining. The law is well settled in Pennsylvania that trial counsel is presumed to have been effective. *Commonwealth v. Fowler*, 550 Pa. 152, 703 A.2d 1027 (1997). Therefore, when advancing a claim of ineffectiveness, it is not sufficient for an appellant merely to state an assertion; the party challenging the propriety of counsel's conduct bears the burden of proving such a claim. *Commonwealth v. Craver*, 547 Pa. 17, 688 A.2d 691 (1997). When reviewing claims of ineffectiveness, our focus is not upon whether another attorney would have proceeded under a different course of action, but whether trial counsel had a reasonable basis to further his client's interest. *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991). Further, prejudice in this context occurs only when there is a reasonable possibility that but-for counsel's unprofessional decisions, the result of the trial would have been different. *Commonwealth v. Wallace*, 555 Pa. 397, 724 A.2d 916 (1999). Keeping these principles in mind, we consider the claims of ineffectiveness advanced by Appellant.

¶ 7 Appellant's first assignment of ineffectiveness pertains to counsel's failure to object to testimony on more than twenty-five separate occasions which Appellant deems to be inadmissible hearsay pursuant to the Tender Years Act, 42 Pa.C.S. § 5985.1 ("Act"). In his brief, Appellant lists citations to the notes of testimony *seriatim* which signal instances where he alleges trial counsel should have placed an objection on the record.

¶ 8 The testimony at issue consists of out-of-court statements which M.B. made to adults regarding the assault. Specifically, Appellant objects to the admission of testimony from Police Officers Ernie Morris and Katherine Hart, Michael B. and Lisa B, M.B.'s parents, and examining physicians, Dr. Victorio Cinco and Steven Shapiro. Appellant also objects to the testimony of M.B. herself. While Appellant does not advance a separate argument for each citation, he generally states that the testimony was inadmissible hearsay which was offered for the truth of the matter asserted. Moreover, Appellant argues that the testimony should not have been admitted since the Commonwealth failed to comply with the Act's notice requirements as evidenced by the fact that there is "no indication in the docket entry that the notice required by the Act was satisfied." Appellant's brief at 19.

¶ 9 42 Pa.C.S. § 5985.1 provides, in pertinent part, as follows:

**Admissibility of certain statements**

(a) **General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing

physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) the court finds, in an in-camera hearing, that the evidence is relevant and at the time, content and circumstances of the statement provide indicia or reliability: and

(2) the child either;

    (i) testifies at the proceeding; or

    (ii) is unavailable as a witness.

**(b) Notice required.—** A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

¶ 10 Preliminarily, we note that M.B. did testify at trial as a witness. *See* N.T., 10/19/98, at 3–53. Moreover, the record reveals that the Commonwealth did provide notice to the defense regarding its intention to offer the statements into evidence. Trial counsel opted not to have the in-camera hearing and acknowledged that he had received notice. *See* N.T., 10/15/98, at 5–9. Finally, the statute does not require a docket entry evidencing notice.

¶ 11 Specifically, Appellant objects to the admission of testimony by numerous Commonwealth witnesses who each told the court what M.B. had revealed to them detailing the assault. M.B. told her parents, the investigating police officers, and the examining physicians that her pop-pop had played a secret game with her. She relayed the details and told them that it hurt her and that she did not like it. Appellant urges that it was critical for

counsel to object to these statements since M.B. "admittedly lied about the conduct alleged and agreed she changed her story." Appellant's brief at 18. We assume that Appellant refers to M.B.'s statement to her mother following the preliminary hearing wherein she stated that she was "teasing" about what her pop-pop had done. The record reveals that the Commonwealth and M.B.'s mother were very forthright with the court and explained the circumstances of that conversation. The jury was permitted to assess the credibility of the explanation.

■ ¶ 12 The law allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse. *See Commonwealth v. Hanawalt*, 419 Pa.Super. 411, 615 A.2d 432 (1992) (hearsay admissions made by a child sexual abuse victim are admissible when court identifies that the statements show spontaneity and repetition, show mental state of the declarant, show use of terminology unexpected of a child of tender years, show lack of motive to fabricate). Clearly, the testimony presented by the Commonwealth established that from the earliest point following the assault, M.B. told her mother what her pop-pop had done to her. Thereafter, she repeated the story to her father and investigating police officers. Finally, M.B.'s own testimony revealed that she had no motive to fabricate a story which would harm Appellant. Even if trial counsel had objected to the twenty-five instances of testimony to which Appellant cites, the trial court would have overruled him since there was no basis upon which to object. Since trial counsel cannot be deemed ineffective for failing to pursue a meritless course of action, we find no error here.

■ ¶ 13 Next, Appellant maintains trial counsel was ineffective for failing to object to the expert testimony of Dr. Steven Shapiro. Appellant argues that Dr. Shapiro's opinions were not given within "a reasonable degree of medical certainty."

Appellant's brief at 19. The record belies this claim.

¶ 14 While Appellant concedes that an expert witness need not use the "magic words" when presenting an opinion, he urges that the expert's testimony must be unambiguous and clear. Appellant's brief at 21. Appellant takes issue with the fact that Dr. Shapiro was unable to date the occurrence of the injury and resulting scar tissue that caused the ammonia irritation to M.B.'s urethral orifice. Appellant also seems to take issue with Dr. Shapiro's conclusion that the history of the assault was consistent with his physical examination of M.B.

¶ 15 The record reveals that Dr. Shapiro is a pediatrician who became a charter member of the American Academy of Pediatrics' section on child abuse and neglect in 1985. Since that time, he has performed hundreds of examinations on young victims of sexual assault for the Office of Children and Youth Services. Dr. Shapiro was qualified as an expert witness in the area of pediatrics and child sexual abuse. He testified that scar tissue present in M.B.'s vagina was consistent with an old injury. While he could not date the injury, he testified that based upon a reasonable degree of medical certainty, M.B.'s injury was consistent with the history that indicated that a male finger had been inserted into her vagina. N.T., 10/19/98, at 119–120. Dr. Shapiro expressed an educated opinion, which he arrived at subsequent to a review of the child's history and a medical examination. The mere fact that Dr. Shapiro was unable to conclusively date M.B.'s injury or provide proof that a finger definitively caused the injury is not a basis upon which counsel could object to the testimony.

¶ 16 Trial counsel vigorously cross-examined the expert in an attempt to undermine his conclusions and discredit him before the jury. The jurors evaluated the content of the direct and cross-examination and determined the weight to be afforded

it. We can find no merit to Appellant's contention of ineffectiveness.

■ ¶ 17 Next, Appellant claims that trial counsel was ineffective for failing to object to "the argument made by the Assistant District Attorney in front of the jury during re-cross examination of a Commonwealth witness." Appellant's brief at 23. Appellant takes issue with an objection made by the prosecutor following a question posed to Officer Nestler on re-cross examination. Trial counsel was questioning Commonwealth witness Police Officer Christopher Nestler, who prepared the affidavit of probable cause, regarding alleged discrepancies between statements M.B. made to Officer Ernie Morris and Detective Katherine Hart concerning the assault. Officer Nestler indicated that Detective Hart's report included more detail, but he denied that there were any inconsistencies or discrepancies between the two reports. Trial counsel again asked the witness whether he had noted inconsistent statements. Then, the prosecutor objected to the question, presumably on the basis that the question had been asked and answered. The dialogue follows.

Q. [Trial counsel to witness] Did you see the inconsistent statements or admissions?

[assistant district attorney]: Objection. He already said the second part goes into more depth, and the PC [affidavit of probable cause] includes everything, includes every single statement. He put it all in there.

N.T., 10/15–16/98, at 101.

¶ 18 Initially, we note that Pa.R.E. 103(a)(1) requires counsel to state the specific grounds for an objection. It is clear from the above dialogue that trial counsel was trying to undermine the Commonwealth's case by pointing out inconsistencies in M.B.'s various recitations of her ordeal. Likewise, the assistant district attorney was trying to prevent repetitious badgering of her witness. Clearly, the objection was proper, and trial counsel was not ineffective for failing to object to it.

¶ 19 Next, Appellant claims that trial counsel was ineffective for failing to object to two questions, which he maintains were irrelevant and prejudicial, posed by the district attorney during her cross-examination of Appellant. The Commonwealth counters that the line of questioning was relevant in that it established M.B.'s state of mind and lack of motive to fabricate. The Commonwealth used the testimony to undermine Appellant's defense that he was being framed and that M.B. was lying about the incident. *See* Commonwealth's brief at 19, 21.

¶ 20 The record reveals that in questioning Appellant about his relationship with M.B. prior to the assault, the prosecutor asked Appellant whether he had ever beaten, screamed at, or hit M.B. N.T., 10/19/98, at 178. Appellant answered that he had not and testified that he and M.B. had a good relationship. This answer was compatible with testimony given by M.B. earlier in the trial, wherein she also testified that she had a good relationship with Appellant, that she loved him, and that he never hit her or screamed at her. Therefore, the assistant district attorney continued to question Appellant regarding the viability of his assertion that someone had a motive to frame him or lie about the incident. *Id.* at 178–188. This line of testimony was relevant and designed to illustrate that M.B. loved Appellant and had no reason to fabricate a hurtful story that would damage his reputation. We find no sustainable basis upon which trial counsel could have objected.

¶ 21 Next, Appellant argues that trial counsel was ineffective for failing to conduct a *voir dire* of the victim regarding her competency to testify and for allowing her to testify without objection regarding her competency. When evaluating the competency of a child witness, we are guided by the following.

> [C]ompetency of a witness is presumed and the burden falls upon the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless rests in the trial judge to make the ultimate decision as to competency.

*Commonwealth v. McMaster*, 446 Pa.Super. 261, 666 A.2d 724, 727 (1995) (citations omitted). A child witness is competent to testify if he possesses:

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.* "Therefore, [t]he determination of competency is a matter for the sound discretion of the trial court, which will not be disturbed absent a clear abuse of that discretion." *Id.* As such, this court has observed that "[o]ur standard of review of rulings on the competency of witnesses is very limited indeed." *Id.*

¶ 22 We have reviewed the record and find no basis for Appellant's allegation of trial counsel ineffectiveness. The record clearly shows that the Commonwealth conducted extensive questioning regarding M.B.'s competency which demonstrated her capability to understand questions, express intelligent answers, recall her ordeal, to understand the difference between reality and fantasy, and to observe the event. Moreover, M.B. conveyed her understanding of the importance of telling the truth. N.T., 10/19/98, at 4–10. While M.B. was a bit confused at one point in the *voir dire* when she stated that she did not understand the difference between the truth and a lie, she later *demonstrated* her understanding of the difference between the two concepts and her understanding of the importance of telling the truth. *Id.* at 6–9.

¶ 23 Clearly, since the Commonwealth conducted such an extensive *voir dire* of M.B., which satisfied the criteria

for demonstrating the competency of a child witness, there was no need for trial counsel to conduct an independent *voir dire*. Further, there was no basis upon which trial counsel could object to M.B.'s competency. Since counsel may not be deemed ineffective for failing to pursue a meritless claim, this argument fails.

¶ 24 In this last assertion of trial counsel ineffectiveness, Appellant claims that trial counsel was ineffective for failing to object to a portion of the Commonwealth's closing argument allegedly implying that Appellant was obliged to present evidence to prove that he was not guilty or call witnesses in his own defense. Appellant argues that the argument impermissibly shifted the burden of proof, and the statement was prejudicial to Appellant.

¶ 25 The record reveals, however, that the Commonwealth acknowledged that Appellant was *not* obliged to put on a defense. *See* N.T., 10/20/98, at 57. The prosecutor *never* stated that Appellant was *required* to present evidence. She merely acknowledged that he had *chosen* to present evidence. Then, she urged that if Appellant had damaging evidence that M.B. had invented the whole incident, he likely would have revealed it. Since Appellant has falsely characterized the testimony, there is no valid argument to address.

¶ 26 Next, Appellant challenges the Commonwealth's closing argument in another regard. Appellant claims that the prosecutor's closing argument was inappropriate, prejudicial, and constituted misconduct. While Appellant fails to frame this argument as an ineffective assistance of trial counsel claim, we will treat it as such.[1] Specifically, Appellant argues that the prosecutor encouraged jurors to find Appellant guilty "because he deserved it." Appellant's brief at 32 (quoting N.T., 10/20/98, at 68). We are guided by the following standard when evaluating claims that a prosecutor's closing argument warrants the grant of a new trial.

[A] prosecutor must limit his statements to the facts introduced at trial and the legitimate inferences therefrom. *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985) (plurality opinion). Moreover, the Commonwealth is afforded reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Upchurch*, [355 Pa.Super. 425] 513 A.2d 995 (Pa.Super 1986). The Pennsylvania Supreme Court [has] reaffirmed that the "unavoidable prejudice test," as articulated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975), is to be used in determining the impact of closing arguments.

[W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, [187 Pa.Super. 568] 145 A.2d 896 (Pa.Super.1958). The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). *See also, Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v.*

---

1. Appellant has preserved an argument that trial counsel was ineffective for failing to object to the prosecutor's statement regarding whether Appellant "deserved" to be convicted. *See* Appellant's Statement of Matters relied upon for Appeal, pursuant to Pa.R.A.P. 1925(b), 2/8/99, at 4. However, on appeal, the Commonwealth notes that Appellant fails to brief his challenge to the prosecutor's statement in terms of ineffectiveness and urges that we deem it waived since Appellant has not preserved the instant argument for review. In the interests of judicial economy, we will address the argument in terms of ineffectiveness to avoid waiver of the claim for failure to preserve.

*Dickerson,* 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno,* 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis,* 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra.*

*Commonwealth v. Johnson,* 516 Pa. 527, 532–33, 533 A.2d 994, 997 (1987). The *Johnson* court went on to state, "Under this test, we are required to judge whether the mental bias of the jury has been so 'fixed' as to implicate the truth-finding function itself." *Id.*

*Commonwealth v. Sanders,* 380 Pa.Super. 78, 551 A.2d 239, 249 (1988); *see also Commonwealth v. Carter,* 537 Pa. 233, 643 A.2d 61 (1994); *Commonwealth v. Rainey,* 540 Pa. 220, 656 A.2d 1326 (1995). Moreover, we must consider the fact that in an adversarial proceeding, the prosecution must be given reasonable latitude to present its version of the case to the jury. *Rainey, supra.* Therefore, a prosecutor's remarks are permissible as long as they are supported by the evidence and contain inferences derived from the evidence. *Carter, supra.*

¶ 27 Herein, the prosecutor's statement regarding whether Appellant "deserved" to be convicted was made after her lengthy and thorough recitation of the evidence supporting her contention that Appellant was guilty. When the prosecutor encouraged the jury to find Appellant guilty because he "deserved" it, she simply empowered the jurors to convict based upon the overwhelming evidence in the record. There was no error.

¶ 28 Finally, Appellant asserts that the trial court erred in not finding that his convictions were against the weight of the evidence which was insufficient to support his convictions. Initially, we observe that Appellant has confused the requisite arguments for challenging the weight and sufficiency of the evidence. While Appellant presents the standards of review for weight and sufficiency determinations, he merely characterizes his arguments in terms of challenges to the weight of the evidence. Therein, Appellant bootstraps a claim that the trial court erred in admitting twenty-five statements, pursuant to the Tender Years Act, which he claims were "hearsay" and not subject to any exception. Appellant argues that the Commonwealth's evidence consisted of repetitious "hearsay" and reconstructed memories which were contradictory and not supportive of the convictions. This appears to be a challenge to the weight of the evidence. However, then Appellant seems to urge that we look at the record without the "hearsay" statements and conclude that the properly-admitted evidence against him is insufficient to sustain his conviction. Appellant further maintains that there was significant evidence at trial demonstrating that he did not commit the crimes for which he was convicted. While Appellant fails to develop a coherent argument challenging the weight or the sufficiency of the evidence, we will address the validity of his convictions in terms of the sufficiency and the weight of the evidence.

■■■■ ¶ 29 With respect to Appellant's challenge of the sufficiency of the evidence, our standard similarly is well-established.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the [factfinder] could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985).

*Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988); *see also Commonwealth v. Bowser,* [425 Pa.Super. 24] 624 A.2d 125 (Pa.Super.1993); *Commonwealth v. Blystone,* [421 Pa.Super. 167] 617 A.2d 778 (Pa.Super.1992); *Commonwealth v. Scott,* [376 Pa.Super. 416] 546 A.2d 96 (Pa.Su-

per.1988). In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Blystone, supra.* In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See Commonwealth v. Nicotra*, [425 Pa.Super. 600] 625 A.2d 1259 (Pa.Super.1993). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

*Commonwealth v. Cassidy*, [447 Pa.Super. 192] 668 A.2d 1143, 1144 (Pa.Super.1995). Finally, we note that in determining the adequacy of the evidence, we must review *all* proof actually received. *See Commonwealth v. Kunkle*, 424 Pa.Super. 499, 623 A.2d 336 (1993). Moreover, it is within the province of the fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, and believe all, none, or some of the evidence presented. *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988).

¶ 30 Preliminarily, we note that we have determined that the testimony of the adults in whom M.B. confided was admissible under the Tender Years Act. Therefore, Appellant's inference that there was no testimony to support his convictions is erroneous. The record reflects that there was sufficient, credible evidence to support the jury's verdict. Furthermore, it is well-established that even the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses. *Commonwealth v. Davis*, 437 Pa.Super. 471, 650 A.2d 452 (1994), *aff'd on other grounds*, 543 Pa. 628, 674 A.2d 214 (1996) (uncorroborated testimony of sexual assault victim, if believed by trier of fact, is sufficient to support convictions even if the defense presents countervailing evidence); *Commonwealth*

*v. Trimble*, 419 Pa.Super. 108, 615 A.2d 48 (1992) (testimony of victim alone sufficient to support conviction for sex offenses). Since the evidence which was presented at trial clearly was specific, we will briefly address the sufficiency of each of Appellant's convictions.

¶ 31 A person is guilty of involuntary deviate sexual intercourse if he "engages in deviate sexual intercourse ... by forcible compulsion ... [with a person] who is less than 13 years of age." 18 Pa.C.S. § 3123. Deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings who are not husband or wife." 18 Pa.C.S. § 3101. We have held that the penetration of one's mouth or tongue into the vaginal area of another person constitutes deviate sexual intercourse. *In Interest of J.R.*, 436 Pa.Super. 416, 648 A.2d 28 (1994). The Commonwealth offered evidence, which the jury evidently credited, that Appellant licked his five-year-old step-grand-daughter's vagina during the course of the secret game. N.T., 10/19/98, at 17–19. Thus, Appellant's conviction of involuntary deviate sexual intercourse is not infirm.

¶ 32 A person is guilty of aggravated indecent assault if he "engages in penetration, however slight, of the genitals or anus of a complainant [who is less than 13 years of age] with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3125. The Commonwealth satisfied this evidentiary requirement through testimony and visual aids which established that Appellant's tongue and finger penetrated M.B.'s vagina. M.B. testified and demonstrated, through the use of a tissue box, how Appellant licked her "coo-coo" [vagina] during the course of the secret game. N.T., 10/19/98, at 17–19. Further, M.B. testified that Appellant put his finger inside her "coo-coo" and "digged down" in it and it hurt. N.T., 10/19/98, at 17–18. Once again, the jury believed this testimony and the testimony of the adults in whom M.B.

entrusted the details of her ordeal, which is sufficient to sustain the conviction.

¶ 33  A person is guilty of indecent assault if he "has indecent contact . . . with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3126. Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101. These evidentiary requirements likewise, were satisfied. *See* N.T., 10/19/98, at 17–19.

¶ 34  A person is guilty of indecent exposure if he "exposes his . . . genitals in . . . any place where there are present other persons under circumstances in which he . . . knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S. § 3127. Credited evidence in support of this conviction was presented to the jury when M.B. testified that Appellant removed his trousers and underwear and encouraged her to touch his penis and buttocks. N.T., 10/19/98 at 21–22, 50.

¶ 35  Appellant also challenges his conviction for endangering the welfare of a child. A person is guilty of endangering the welfare of child if he is supervising a child under eighteen years of age and knowingly violates his duty to care, protect or support the child. 18 Pa.C.S. § 4304. The record clearly establishes that M.B.'s mother entrusted Appellant with the care of M.B. while she visited with her sick mother in the hospital. The acts which Appellant performed upon M.B. and those which he instructed her to perform upon him were not designed to protect her or care for her. They violated her trust and her childhood naiveté.

¶ 36  Similarly, the testimony referred to supports Appellant's conviction for corruption of minors. 18 Pa.C.S. § 6301 provides that an individual is guilty of the corruption of minors if he engages in acts which tend to corrupt the morals of minors who are less than eighteen years of age.

¶ 37  In reviewing a challenge to the weight of the evidence, we look to see whether the "verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." *See Commonwealth v. Pirela*, 398 Pa.Super. 76, 580 A.2d 848, 852 (1990). After reviewing the evidence which was presented to the jury, this Court is not shocked by the verdict.

¶ 38  Judgment of sentence affirmed.