J-S30038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIRK DANIEL HAGLESTON | : | |
| | : | |
| Appellant | : | No. 308 MDA 2021 |

Appeal from the PCRA Order Entered February 8, 2021
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000471-2015

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED FEBRUARY 25, 2022**

Appellant, Kirk Daniel Hagleston,[1] appeals from the order denying his first petition filed under the Post Conviction Relief Act ("PCRA").[2]  We affirm.

On January 25, 2017, a jury convicted Appellant of rape of a child, aggravated indecent assault of a child, and indecent assault of a person less than thirteen years of age.[3]  The PCRA court summarized the evidence at trial as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] While Appellant's surname is spelled as "Hagelston" in his brief, the Commonwealth's brief, the PCRA court's opinion, as well as this Court's opinion resolving Appellant's direct review, we use the spelling of Appellant's surname as it appeared on the docket sheet below.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] 18 Pa.C.S. §§ 3121(c), 3125(b), 3126(a)(7).

[O]ne night in July 2011, when W.D. was nine years old and while her mother and siblings were asleep, [Appellant] entered her room, dragged her downstairs and out the front door to a patio on the side of the house, tore her clothes off, forced her to the ground, and raped her. W.D.'s mother, T.D., who was at that time [Appellant's] paramour, suspected the very next day that some sort of assault had occurred based on the changed behavior of both W.D. and [Appellant]. T.D. took W.D. to see a doctor in regard to her concerns, and went so far as to contact the police, but W.D. denied that the rape occurred because she was scared of [Appellant]. A few years later, in 2015, W.D. disclosed the rape to a guidance counselor at school [who] reported it to the appropriate authorities[.]

PCRA Court Opinion, 5/7/21, at 2-3 (record citations omitted).

Among the Commonwealth witnesses at trial was Craig Collison, M.D., a pediatrician at Mount Nittany Health and the Medical Director for Centre County Children's Advocacy Center. As the PCRA court observed, Dr. Collison's testimony was brief and focused on his March 2015 examination of W.D. *Id.* at 4. Dr. Collison discussed his relevant experience and qualifications at the outset of his testimony, including the fact that he was a board-certified pediatrician with experience examining children who claim to have experienced sexual abuse and that he had over 150 hours of relevant training. *Id.*; *see also* N.T. (trial), at 116-18. However, Dr. Collison was not qualified as an expert.

The PCRA court summarized Dr. Collison's testimony as follows:

1. He conducted a full physical examination of W.D. in March 2015, including a genital exam. The examination was not specific to the then-allegations against [Appellant], but rather was a general health examination. [N.T. (trial), at 119-20.]

2. W.D. presented as a healthy thirteen[-]year-old girl in the middle of her pubertal development, exhibiting no signs of genital

- 2 -

trauma with an overall normal result. *Id.* at 121-22, 123, 127, 132.

3. Specifically with regard to W.D.'s hymen, it was "concentric and didn't have any lesions or notches, no signs of trauma." This is neither indicative nor contraindicative of sexual abuse. It cannot be determined, based on examination of an individual's hymen, whether that individual has been sexually abused, or whether she has been sexually active. *Id.* at 124-26.

4. The full scope of his testimony was "within a reasonable agreement of medical certainty." *Id.* at 129.

[5. Defense counsel's] cross-examination of Dr. Collison was brief, focusing primarily on his findings regarding W.D.'s hymen (i.e., that no trauma was observed), and that the examination produced a normal result. *Id.* at 130-32.

PCRA Court Opinion, 5/7/21, at 3-4 (some formatting; footnotes omitted).

Relevant to this appeal, Dr. Collison testified as follows on direct examination regarding what an examination of a hymen reveals about a patient's history of sexual abuse:

Q. [] So based on the exam of the hymen, can you say whether someone's been sexually abused?

A. No.

Q. And why is that?

A. Like we talked about, sexual activity does not necessarily equal trauma to the level that would leave a scar or a change in the hymen long term. Acutely if there are issues with the hymen we should be able to see that. If somebody's having bleeding or pain with that, that is something in a few days after that occurred that we can see.

Q. Now is that something you would necessarily see years later?

A. No. Again unless it went to the level that we talked about where it was taken all the way to the base and as it heals, then it would heal with a notch or a change in it.

Q. Okay. Is it rare for you to see a victim of sexual abuse with normal examination?

A. 95 percent of the children that we see that there is an accusation of sexual abuse have normal exams.

Q. That would be like this exam we're discussing right now?

A. Correct. So I cannot make any conclusions from the exam and that's -- the majority of the time that's how it goes for us.

*    *    *

Q. What's your overall assessment of [W.D.'s] exam?

A. [W.D.] had a normal exam.

Q. And does that preclude the fact abuse may have occurred?

A. No.

N.T. (trial), at 126-28.

The trial court sentenced Appellant to an aggregate term of imprisonment of 17 to 37 years. Appellant filed a direct appeal, and on August 22, 2018, this Court affirmed his conviction but vacated the imposition of sexual offender registration requirements and remanded for the trial court to reassess his registration requirements. **Commonwealth v. Hagelston**, No. 1515 MDA 2017, 2018 WL 4007500, at *4-5 (Pa. Super. filed Aug. 22, 2018) (unpublished memorandum). On June 28, 2019, the trial court imposed a new judgment of sentence.

On March 4, 2020, Appellant filed this timely PCRA petition.[4] The PCRA court held an evidentiary hearing on February 5, 2021. On February 8, 2021,

_____

[4] Appellant's PCRA petition was timely as it was filed within one year of July 29, 2019 the last date upon which he could have filed a direct appeal from his
*(Footnote Continued Next Page)*

- 4 -

the court issued an order denying Appellant PCRA relief. This timely appeal followed.

Appellant raises two issues for our review:

A.    Whether trial counsel's failure to object to Dr. [Collison's] testimony was *per se* ineffective and may not be the foundation for strategic decision making when Dr. [Collison's] testimony effectively invaded the province of the jury in determining credibility of the minor child in a sexual assault case with no injuries by testifying that lack of injury does not mean that an assault did not occur.

B.    Whether trial counsel's failure to object to Dr. [Collison's] testimony was *per se* ineffective and may not be the foundation for strategic decision making when Dr. [Collison] was not qualified as an expert and offered an expert opinion contrary to the dictates of Pa.R.E. 701(c), which explicitly prohibits experts giving expert opinions under the guise of being lay witnesses.

Appellant's Brief at 4 (unnecessary capitalization omitted; some formatting).

We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and its legal conclusions are free of error. ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020). When supported by the record, the PCRA court's factual findings and credibility determinations are binding on this Court, but we review the lower

_____

June 28, 2019 judgment of sentence. ***See*** 42 Pa.C.S. § 9545(b)(1), (3) (PCRA petition must be timely filed within one year of date judgment becomes final, which occurs at the expiration of time for seeking direct review if no appeal is filed); Pa.R.A.P. 903(c)(3) (where no post-sentence motion is filed, notice of appeal must be filed within 30 days of imposition of judgment of sentence); ***see also*** 1 Pa.C.S. § 1908 (when the last day for a statutory filing deadline falls on a weekend or holiday, the deadline shall be extended until the next business day); Pa.R.A.P. 107 (incorporating 1 Pa.C.S. § 1908 with respect to deadlines set forth in the Rules of Appellate Procedure).

court's legal conclusions under a *de novo* standard of review. *Id.* Our scope of review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. *Id.*

In this appeal, Appellant argues that his trial counsel, Michael S. Gingerich, Esquire, provided ineffective assistance of counsel by failing to object to the testimony of Dr. Collison. When assessing a claim of ineffective assistance under the PCRA, we begin our analysis with the presumption that counsel has rendered effective assistance. *Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Id.* (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *Id.*

Appellant first argues that trial counsel was ineffective for failing to object to Dr. Collison's testimony that (i) an examination of a hymen does not show whether sexual abuse occurred; (ii) 95 percent of the children claiming sexual abuse that he examines have normal gynecological examinations; (iii) he could not conclude that the victim, W.D., was abused based upon her examination; and (iv) he also could not rule out that W.D. may have been

abused. N.T. (trial), at 126-28. Appellant argues that this testimony constitutes improper bolstering of the victim's testimony, which our Supreme Court has ruled is an improper invasion of the jury's exclusive role to assess the credibility of witnesses. Appellant contends that trial counsel had no reasonable basis for not objecting as counsel testified at the PCRA hearing that Dr. Collison's testimony "could be read" as bolstering the victim's testimony and, if there was legal authority prohibiting bolstering, he "certainly should have been aware of it." N.T. (PCRA hearing), at 9. Appellant asserts that he was prejudiced by trial counsel's error allowing Dr. Collison to vouch for W.D.'s credibility, particularly in light of the fact that this case hinged on whether the jury believed the victim's otherwise uncorroborated accusation.

Appellant relies principally on our Supreme Court's decision in **Commonwealth v. Maconeghy**, 171 A.3d 707 (Pa. 2017). In **Maconeghy**, the Commonwealth called as a witness a pediatrician, Dr. Novinger, who examined and interviewed C.S., the alleged victim of sexual abuse by the defendant. **Id.** at 708. Dr. Novinger, who was qualified as an expert witness, testified that no physical signs of abuse were present and that the fact of abuse could be determined only through patient history. **Id.** Dr. Novinger further testified that the "history [the victim] provided to me pretty clearly indicated that she was sexually abused" and "I really believe strongly that was my medical conclusion that this child was victimized." **Id.**

This Court vacated the defendant's conviction based upon Dr. Novinger's improper bolstering of the victim's credibility, and our Supreme Court affirmed. The Supreme Court held that

> an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse. We find that such testimony intrudes into the province of the jury relative to determining credibility.

*Id.* at 712; *see also Commonwealth v. Hairston*, 249 A.3d 1046, 1069 (Pa. 2021) ("Because issues of credibility are within the exclusive province of the jury, expert testimony on the issue of a witness's credibility is prohibited.") (internal citation omitted). The Court ruled that an expert witness's prohibition on bolstering applied regardless of whether it was "direct vouching (e.g., 'I believe the complainant is telling the truth')" for the victim's credibility or "indirect vouching (e.g, 'I conclude that the complainant was sexually assaulted based upon the history she related.')." *Maconeghy*, 171 A.3d at 713. Furthermore, the *Maconeghy* Court recognized the additional potential concern for bolstering the credibility of a child witness in an abuse case, noting the "the high stakes involved in child sexual assault cases and the potential power and persuasiveness of testimony by those clothed with the mantle of professional expertise." *Id.*; *see also* 42 Pa.C.S. § 5920(b)(3) (providing that an expert witness testifying regarding the dynamics of sexual violence, victim responses to sexual violence, and the impact on sexual violence on

victims in sexual abuse cases may not offer an "opinion regarding the credibility of any [] witness, including the victim").

While **Maconeghy** related to bolstering by an **expert** witness, we note that, as discussed in more detail below, Dr. Collison was not qualified as an expert at trial. However, this Court has held that **lay** witnesses are also precluded from offering testimony that would bolster a witness's credibility. **Commonwealth v. Yockey**, 158 A.3d 1246, 1255-56 (Pa. Super. 2017); **Commonwealth v. McClure**, 144 A.3d 970, 977 (Pa. Super. 2016). Such lay witness bolstering is particularly problematic in cases where the lay witness is testifying in a professional capacity, which could provide an "'unwarranted appearance of authority in the subject of credibility,' something ordinary jurors are able to assess." **McClure**, 144 A.3d at 977 (citation omitted) (police detective's testimony that he did not believe defendant-daycare worker's explanation for child's injuries was improper bolstering); **Commonwealth v. Loner**, 609 A.2d 1376, 1377 (Pa. Super. 1992) (child caseworker's testimony that she believed victim's report of abuse improperly bolstered the victim's veracity).

Addressing this issue, the PCRA court found Appellant's argument to lack merit as Dr. Collison's testimony did not bolster W.D.'s credibility:

> Here, Dr. Collison did not testify to bolster W.D.'s credibility. While his testimony was of limited probative value, it was essentially necessary for the Commonwealth to present it so as to negate doubts that might arise in the minds of jurors if no discussion was made regarding W.D.'s physical condition (i.e., the misconception that rape will always result in permanent genital injury resulting in the inference that no evidence of injury means

no evidence of rape), and to avoid the appearance of attempting to hide exculpatory evidence were [Appellant] to call Dr. Collison as witness [. A]ny bolstering effect Dr. Collison's testimony might have had was intrinsically tied to the jury's credibility determination regarding W.D.'s testimony. Had they found her not credible, the lack of physical injury would support that finding, rather than contradict it.

PCRA Court Opinion, 5/7/21, at 10. The PCRA court further distinguished

**Maconeghy**:

[I]n no way did Dr. Collison's testimony mirror that of the **Maconeghy** witness. He did not examine W.D. with the specific intent of determining whether she had been sexually assaulted; did not observe a forensic interview with her; did not refer in any way to the medical history he obtained from her and did not in any manner, offer an opinion as to whether she had been sexually assaulted. In fact, Dr. Collison was very careful in his testimony to make clear, repeatedly, that a normal examination was not conclusive evidence either way regarding the occurrence or nonoccurrence of sexual assault. His testimony is thus permissible under **Maconeghy**, rather than barred by it

**Id.** at 9.

We agree with the PCRA court that Dr. Collison's testimony was not prohibited "bolstering" of W.D.'s testimony. In particular, we find support in our Supreme Court's decision in **Commonwealth v. Minerd**, 753 A.2d 225 (Pa. 2000). In **Minerd**, the Commonwealth presented the testimony of Dr. Carver, an expert in obstetrics and gynecology, who performed a physical examination of the two sexual assault minor victims:

Dr. Carver testified that she found no evidence of physical trauma to the girls' genital or anal areas. According to Dr. Carver, the absence of physical trauma did not prove that the abuse had never occurred. She explained that because of the nature of the muscle that closes the anus, there would have been an adequate time between when the abuse occurred and the examination for any

- 10 -

damage that had been done to heal. On cross-examination, Dr. Carver confirmed that she was not stating that the alleged acts did or did not occur, and agreed that that it could be that "there was no trauma to the anus or genitals because the acts in fact did not occur." Dr. Carver stated that "either way, there was no evidence of it."

*Id.* at 228 (record citations omitted). The Court rejected the defendant's argument that the expert's testimony bolstered the victims' reports of abuse:

In this case, Dr. Carver's testimony was probative of the veracity of the children. However, Dr. Carver was neither asked for, nor did she express, any opinion as to whether the children were telling the truth about being sexually abused. Her testimony only explained the significance of the results of the physical examination. Moreover, Dr. Carver's testimony regarding her physical findings was inconclusive as to whether any abuse had even occurred. Thus, we do not agree that the expert impermissibly bolstered the children's credibility.

*Id.* at 230 (internal citations omitted).

In *Maconeghy*, the Court distinguished its earlier decision, noting that the expert's testimony did not infringe on the jury's authority to assess the credibility of the witnesses:

[T]he evidence in *Minerd* fell within the class of generalized evidence about victims of sexual assault that is more widely approved in the courts and was focused on a physical examination; indeed, the Court specifically noted that the expert witness "confirmed that she was not stating that the alleged acts did or did not occur" relative to the complainant.

*Maconeghy*, 171 A.3d at 715 (quoting *Minerd*, 753 A.2d at 228) (emphasis omitted).

Here, the relevant testimony is nearly identical to *Minerd*. Dr. Collison did not testify that he believed W.D.'s allegation that Appellant had abused

- 11 -

her. Instead, like Dr. Carver in **Minerd¸** Dr. Collison merely described his physical examination of W.D. and stated that the normal examination neither confirmed nor negated the abuse allegations. N.T. (trial), at 126-28; **cf. Minerd**, 753 A.2d at 228, 230. While Dr. Collison's testimony was relevant to the jury's evaluation of W.D.'s account as the PCRA court explained, PCRA Court Opinion, 5/7/21, at 10,[5] it did not bolster the credibility of W.D.'s testimony that Appellant sexually abused her when she was nine-years old. While we note that Dr. Collison did not testify as an expert as was the case in **Maconeghy** and **Minerd**, we do not find this fact determinative as the rule against bolstering a witness's credibility applies equally if it comes from a lay witness as from an expert. **See Yockey**, 158 A.3d at 1255-56; **McClure**, 144 A.3d at 977. Accordingly, Appellant is entitled to no relief on his first claim of ineffective assistance of counsel. **See Minerd**, 753 A.2d at 230; **see also Commonwealth v. Callahan**, No. 1381 EDA 2020, 2021 WL 4119559, at *3 (Pa. Super. filed September 9, 2021) (unpublished memorandum) (counsel

---

[5] The **Minerd** Court explained as follows the relevance of the medical expert's testimony regarding the inconclusive nature of the negative results of the victims' physical exams:

> Since the children alleged that the abuse occurred several years ago, there was no recent physical evidence. Given this passage of time, Dr. Carver's testimony was relevant to explain to the jurors the absence of physical trauma. Without such an explanation, jurors may improperly draw a negative inference against the Commonwealth, based upon a layperson's untutored assumptions, and rely upon that inference in rendering a verdict.

753 A.2d at 231.

was not ineffective for failing to object to medical expert's testimony that child victim's vaginal examination was consistent with sexual abuse even though no physical trauma was detected as such testimony was permissible under **Minerd**).[6]

In his second issue, Appellant argues that trial counsel was ineffective for failing to object to Dr. Collison's offering of expert opinions during his testimony without him ever being qualified as an expert by the trial court. Appellant asserts that Dr. Collison's testimony bore the hallmarks of being that of an expert witness—including by detailing his credentials, his description of a general gynecological exam, his discussion of results in other patients who allege abuse, and his statement that his testimony was given within a reasonable degree of medical certainty. N.T. (trial), at 116-18, 120, 122-29. Appellant argues that, as a non-expert, he was barred under the Pennsylvania Rules of Evidence from offering an opinion based upon scientific, technical, or other specialized knowledge, and trial counsel should have objected on this ground. Appellant contends that trial counsel had no reasonable basis for not objecting to this testimony and that if counsel had objected there was a reasonable probability that the outcome of the trial would have had a different result.

---

[6] Although **Callahan** is an unreported decision, we cite to it for its persuasive value. **See** Pa.R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

Pursuant to Pennsylvania Rule of Evidence 701, a witness not testifying as an expert is permitted to offer an opinion that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Rule 702, relating to testimony by expert witnesses, states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Expert testimony is "permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." ***Commonwealth v. Jones***, 240 A.3d 881, 890 (Pa. 2020) (citation omitted). While the expert is not required to use "magic words" in stating her opinion, "the expert must base the substance of her opinion on a reasonable degree of certainty instead

of mere speculation." ***Commonwealth v. Yocolano***, 169 A.3d 47, 61 (Pa. Super. 2017) (quoting ***Commonwealth v. Gonzalez***, 109 A.3d 711, 727 (Pa. Super. 2015)). "[T]he standard for qualifying as an expert is a liberal one and the witness need only have any reasonable pretension to specialized knowledge on the subject matter under investigation and the weight to be given to the expert's testimony is for the factfinder." ***Jones***, 240 A.3d at 890 (internal quotation marks and citation omitted). "It is the job of the trial court to assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge." ***Yocolano***, 169 A.3d at 60 (quoting ***Nobles v. Staples, Inc.***, 150 A.3d 110, 114 (Pa. Super. 2016)).

We further note that "the rules governing expert and lay testimony do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." ***Id.*** at 62; ***see also Jones***, 240 A.3d at 890; ***Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa. Super. 2013). However, where the same witness testifies in a dual capacity as a fact and expert witness, the proponent of the witness should make clear which testimony is based upon expert knowledge and which is based upon personal perception and the trial court should ensure that "the jury is properly instructed to avoid confusion." ***Jones***, 240 A.3d at 890; ***Yocolano***, 169 A.3d at 62; ***Huggins***, 68 A.3d at 973-74.

Like the PCRA court, we assume for the purposes of our analysis that Appellant has shown arguable merit and a lack of reasonable basis for trial counsel's failure to object to Dr. Collison's unqualified opinion testimony. First, it is clear that Dr. Collison offered opinion testimony—most notably that a "normal" genital examination of a child is not inconsistent with past sexual abuse—and that, in formulating his opinion, he applied his scientific, technical, and other specialized knowledge. N.T. (trial), at 116-18, 126-28. While Dr. Collison also testified as a fact witness regarding his examination of W.D., this does not alter the fact that the trial court did not qualify him as an expert or properly instruct the jury on its evaluation of Dr. Collison's expert opinions. *See Jones*, 240 A.3d at 891 (police detective's testimony regarding common behavior of victim of sexual abuse that drew upon his specialized training and experience was improperly admitted where detective was not qualified as expert). Furthermore, while trial counsel testified at the PCRA hearing that he viewed Dr. Collison's testimony as "helpful" or at least "not [] harmful to [Appellant's] case" because Dr. Collison testified that there were no injuries to the victim's hymen which may have run counter to the jury's expectations, N.T. (PCRA hearing), at 6-8, trial counsel did not offer any explanation of why he did not at least insist that Dr. Collison's opinions be offered in his capacity as a medical expert and with the appropriate jury instruction.

Turning to the prejudice prong of the ineffective assistance standard, however, we find no error in the PCRA court's determination that Appellant did not prove a reasonable probability that, but for trial counsel's lack of an

objection to Dr. Collison's unqualified opinion testimony, Appellant's trial would have resulted in a different outcome. ***Reid***, 259 A.3d at 405. Initially, Appellant does not argue that Dr. Collison lacked the appropriate scientific or technical expertise, that his testimony was not helpful to the trier of fact, or that his opinion was not generally accepted in his field. ***See*** Pa.R.E. 702. In other words, there is no claim that the trial court would not have qualified Dr. Collison as an expert and therefore he would not have been permitted to opine as to how the results of W.D.'s examination compare to those of other children who allege sexual abuse.[7] ***Cf. Yocolano***, 169 A.3d at 63 (trial court abused its discretion by permitting opinion testimony by doctor and nurse that victim's wounds were consistent with ligature and strangulation marks without assessing whether the witnesses had specialized knowledge on the causation of such wounds that would have allowed them to testify as experts on the subject). Moreover, Appellant has not articulated how Dr. Collison's opinions, whether given as a lay or expert witness, were harmful to Appellant's defense

---

[7] Indeed, we observe that similar expert testimony to that of Dr. Collison has been allowed in other child sexual abuse cases. ***See, e.g.***, ***Minerd***, 753 A.2d at 228, 230-31 (obstetrician and gynecologist who examined child sexual abuse victims was permitted to offer expert opinion that absence of physical trauma did not prove that abuse had not occurred); ***Callahan***, 2021 WL 4119559, at *1, 3 (court properly allowed expert testimony by nurse specializing in sexual assault cases that normal vaginal examination of child victim was consistent with sexual abuse because large majority of such cases present no physical evidence); ***Commonwealth v. Bishop***, 742 A.2d 178, 185 (Pa. Super. 1999) (trial counsel not ineffective for failing to object to expert testimony of treating pediatrician that scar tissue in child victim's vagina was consistent with an old injury from sexual abuse).

that the incident of sexual abuse did not occur, particularly in light of Dr. Collison's testimony that W.D.'s examination revealed no sign of genital trauma and the examination was consistent with a finding that no sexual abuse occurred. N.T. (trial), at 126-27, 131-32.

Furthermore, as the PCRA court observed, the next witness to testify at trial after Dr. Collison was admitted as an expert on the behavior of child sexual abuse victims, and the trial court did provide the appropriate expert witness instruction to the jury at the outset of her testimony. N.T. (trial), at 139-40. The trial court additionally instructed the jury as to its consideration of expert witness testimony as part of the jury charge and this latter instruction was not specifically tailored to any particular expert. *Id.* at 228-29. Therefore, while the jury was not instructed specifically as to Dr. Collison's testimony, the jurors were made aware that they were not bound by the testimony of a witness with specialized knowledge, skill, and training and were free to determine the weight to be afforded to the expert opinion. *See* PCRA Court Opinion, 5/7/21, at 11; *see also Huggins*, 68 A.3d at 973-74.

We therefore conclude that the PCRA court's determination that Appellant did not establish prejudice on his second ineffective assistance of counsel claim is supported by the record and free of legal error. As Appellant was not entitled to relief on either of his PCRA claims, we affirm the PCRA court's denial of Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2022