J-S44041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RACHEL WARRIS, | : | |
| | : | |
| Appellant | : | No. 2479 EDA 2016 |

Appeal from the Judgment of Sentence June 14, 2016
in the Court of Common Pleas of Lehigh County,
Criminal Division, No(s):  CP-39-CR-0003069-2015

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 31, 2017**

Rachel Warris ("Warris") appeals from the judgment of sentence imposed following her conviction of involuntary deviate sexual intercourse - person less than 16 years of age, statutory sexual assault, corruption of minors, and indecent assault.[1]  We affirm.

The trial court sets forth the relevant facts as follows:

> Keyla Escobar, her husband, and her two daughters, ages 10 and 11, and her son, L.V.; age 7, moved from Puerto Rico to the United States in August of 2009.  At that time, [Escobar] and her family resided at 1839 South Church Street, Allentown, Lehigh County, Pennsylvania.  In 2011, they moved down the block to 1832 South Church Street.  Her son, L.V., befriended [S.W.], the son of [Warris].  In fact, L.V. and [S.W] were together nearly every day.  In 2013, L.V. and his family moved to 829 Susquehanna Street, Allentown, Lehigh County, Pennsylvania.  Despite the distance, L.V. and [S.W.] still socialized together every day after school from about 6:00 PM to 6:30 PM.

---

[1] **See** 18 Pa.C.S.A. §§ 3123(a)(7); 3122.1(b); 6301(a)(1)(ii); 3126(a)(8).

In early February 2015, after getting together with [S.W.], L.V. (then age 13) brought home a bracelet that [Warris] had made for him. Ms. Escobar thought that was "weird," and put the bracelet on the back porch next to the trash can. About two weeks later, on February 11, 2015, L.V. visited [S.W.] after basketball practice. He arrived between 5:00 PM and 6:00 PM. L.V. and [S.W] went upstairs to use the PlayStation. Soon thereafter, Mr. Warris took his three sons to church. Consequently, L.V. went downstairs to the living room to watch television. He sat on the loveseat, while [Warris] was seated on the sofa in the living room. As [Warris] was watching the television, L.V. testified that [Warris] started to touch his private area over his clothes. Then [Warris] began to bite his chest area and arms over his shirt. [Warris] then pulled down L.V.'s pants and underpants, and she played with his penis with her hands. [Warris] then sucked his penis with her mouth for about five minutes. When [Warris] bit the tip of L.V.'s penis, he told her to stop because it hurt. She told him that he "can take it" and continued to suck his penis for several more minutes.

As approximately 6:10 PM, Ms. Escobar called the Warris residence to coordinate a time to up L.V. Upon L.V. answering the telephone, Ms. Escobar heard heaving breathing. L.V. immediately asked his mother to pick [him] up right away, or he would walk home. Ms. Escobar left her place of employment and drove to the Warris residence. When she arrived, she remained in the car and waited for L.V. to exit the Warris residence. When L.V. entered the car with Ms. Escobar, he sat down in the passenger seat and looked down at his lap. He was extremely quiet. In fact, after he arrived at home, he remained withdrawn.

The next morning, on February 12, 2015, L.V. had left his cell phone on his desk because it was a pay-as-you-go phone and he needed his mother to add talk time to the cell phone. At approximately 10:30 AM, Ms. Escobar retrieved L.V.'s cell phone. A Facebook page immediately popped up and Ms. Escobar observed a picture of L.V. when he was three years old that had the words, "I love you" on it. When Ms. Escobar opened up the Facebook page, she could discern that [Warris] had sent this to her son. Ms. Escobar was shocked and pained. This prompted Ms. Escobar to search L.V.'s phone and open earlier messages. To Ms. Escobar's dismay, she noticed that the text messages from [Warris] began in January of 2015. Nearly unable to speak, Ms. Escobar called her husband, Ortero, crying. Her

husband immediately returned home. Together, at approximately 11:15 AM, Ms. Escobar and her husband went to school to speak with L.V. Ms. Escobar told her son to tell her the truth about what had happened the night before. L.V. indicated that [Warris] "tried to touch me." He advised them that he had hit her "on the back of her head to get out."

Thereafter, all three of them went to the Warris residence to confront [Warris]. [Warris] did not want to speak with them, but eventually came out to the driveway. Ms. Escobar wanted an explanation as to what had happened between her son and the [Warris]. [Warris] said that "it is a joke. You are not supposed to tell your mommy." When Ms. Escobar informed [Warris] that she was going to the police, [Warris] called her a "fucking bitch" and assumed an attitude. Ms. Escobar, her husband, and L.V. left the Warris residence and went directly to the Allentown Police Department….

Theresa Rentko, a client interview specialist, spoke with L.V. at this time in a private room at the Lehigh County Government Center for approximately 30 minutes. L.V. appeared to be nervous, and anxious. In her experience, Ms. Rentko found that it is very difficult for boys to come forward after being abused. L.V. had told Ms. Rentko that while he was watching "Family Feud" on the television, [Warris] walked over to him and started to touch him and bite his arms. L.V. said that [Warris] bit his penis, and tried to put his penis in her mouth. In her training and experience, Ms. Rentko knew that this version of events was not the complete story, as it is a process to get an adolescent boy to reveal what transpired.

L.V. testified at trial that [Warris] would flash her breasts about twice a week. In particular, [Warris] had flashed her breasts when he and [S.W.] were playing on the PlayStation. [Warris] merely said, "Oops, I hope nobody saw that" when she lifted up her shirt to reveal her breasts. [Warris] also would flash her breasts when L.V. and [S.W.] were watching the television.

Detective John Buckwalter ["Detective Buckwalter"] of the Allentown Police Department Special Victims Unit investigated the within matter. After reviewing the text exchange between [Warris] and L.V., and after watching Ms. Rentko's interview with L.V., Detective Buckwalter interviewed [Warris] on February 13,

2015. [Warris] voluntarily arrived at the Lehigh Government Center at 1:30 PM with her husband. The interview was audio recorded. [Warris's] date of birth is June 6, 1975, and she was 39 years old at the time of the incident. [Warris] informed Detective Buckwalter that her texts were meant to be a joke. Initially, she did admit to biting L.V.'s penis, but only after he put his penis in her face. Upon further questioning, [Warris] stated that she may have sucked on L.V.'s penis for a couple of seconds and then bit the tip of his penis. This version of events evolved into her sucking on L.V.'s penis for about one minute. [Warris] also admitted that she had flashed her breasts a while ago, and that it was meant to be a joke. [Warris] and her husband returned home after the interview.

At the time of trial, [Warris] admitted to exposing her breasts to L.V. She also admitted to having sent the myriad of text messages to L.V. However, [Warris] testified that she was the victim in the incident because L.V. approached her and put his penis in her face. [Warris] stated that she bit the tip of his penis, but denied sucking his penis, contrary to her version of events related during the interview with Detective Buckwalter.

Trial Court Opinion, 9/6/16, at 5-10 (citations and footnotes omitted).

On March 9, 2016, a jury found Warris guilty of the above-mentioned crimes. On June 14, 2016, the trial court sentenced Warris to an aggregate prison term of 15 to 33 years. Warris filed a Post-Sentence Motion, which the trial court denied. Warris filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Warris raises the following questions for our review:

A. Whether or not the evidence as presented was sufficient as a matter of law to support the conviction[s] for involuntary deviant sexual intercourse, statutory sexual assault, corruption of minors, and indecent assault – person less than 16 years of age when the evidence that [Warris] consented

or organized the illegal activity was questionable and uncertain?

B. Whether the lower court abused its discretion in imposing manifestly excessive and unreasonable sentences the most serious [of] which were at the statutory maximum limit and all were imposed consecutively when the court failed to consider any mitigating factors, failed to apply and review all the necessary factors set as forth in 42 Pa.C.S.A. § 9721 and 42 Pa.C.S.A. § 9781(c) and (d) or otherwise failed to set forth appropriate reasons for its decision that the maximum sentences were the only appropriate sentences?

Brief for Appellant at 7-8 (capitalization omitted).

In her first claim, Warris alleges that the evidence was insufficient to sustain her convictions because L.V.'s testimony was not credible. *Id.* at 12, 15, 16. Warris contends evidence did not "show that she intentionally and knowingly engaged in the sexual contact between her and the 13-year-old boy and that any incident that did occur was not her making[,] but she was only responding to the inappropriate attentions shown her by the victim." *Id.* at 16. Warris further contends that any other evidence was circumstantial or inconclusive. *Id.*

Initially, a challenge to the credibility of a witness goes to the weight of the evidence, not its sufficiency. *See Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011); *see also Commonwealth v. Widner*, 744 A.2d 745, 751-52 (Pa. 2000) (discussing the distinction between challenges to the weight and sufficiency of the evidence). The failure to recognize the distinction between the two separate claims may result in waiver. *See, e.g., Commonwealth v. Sullivan*, 864 A.2d 1246, 1248-49 (Pa. Super.

2004); ***Commonwealth v. Birdseye***, 637, A.2d 1036, 1039-40 (Pa. Super.

1994).  Despite Warris's confusion, we will address her sufficiency claim.[2]

We apply the following standard of review when considering a

challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the
> evidence claim is whether[,] viewing all of the evidence admitted
> at trial in the light most favorable to the verdict winner, there is
> sufficient evidence to enable the fact-finder to find every
> element of the crime beyond a reasonable doubt.  In applying
> the above test, we may not weigh the evidence and substitute
> our judgment for the fact-finder.  In addition, we note that the
> facts and circumstances established by the Commonwealth need
> not preclude every possibility of innocence.  Any doubts
> regarding a defendant's guilt may be resolved by the fact-finder
> unless the evidence is so weak and inconclusive that as a matter
> of law no probability of fact may be drawn from the combined
> circumstances.  The Commonwealth may sustain its burden of
> proving every element of the crime beyond a reasonable doubt
> by means of wholly circumstantial evidence.  Moreover, in
> applying the above test, the entire record must be evaluated and
> all evidence received must be considered.  Finally, the finder of
> fact[,] while passing upon the credibility of witnesses and that
> weight of the evidence produces, is free to believe all, part or
> none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation

omitted).

---

[2] We note that Warris failed to raise a weight challenge, by name, in her court-ordered Pa.R.A.P. 1925(b) Concise Statement.  Nevertheless, we note that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.  This Court cannot substitute its judgment for that of the jury on issues of credibility." ***Commonwealth v. Dougherty***, 860 A.2d 31, 36 (Pa. 2004) (citation omitted).  Ostensibly, the jury found L.V.'s testimony to be credible and we will not disturb such a finding on appeal. ***See id.***

Involuntary deviate sexual intercourse is defined, in relevant part, as follows:

**(a) Offense defined.** – A person commits a felony of the first degree when the person engages in deviate sexual intercourse with complainant:

***

(7)  who is less than 16 years of age and the person is four or more years older than the complainant and person are not married to each other.

18 Pa.C.S.A. § 3123(a)(7).   "Deviate sexual intercourse" is defined as "sexual intercourse per os or per anus between human beings…."  **Id.** § 3101.

Statutory sexual assault, in relevant part, occurs when a person engages in sexual intercourse with the complainant, who is under 16 years old, and the assailant is 11 or more years older than the complainant.  **Id.** § 3122.1(b).

Corruption of a minor is defined as an individual 18 years of age or older who, "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree."  **Id.** § 6301(a)(1)(ii).

"A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent

contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." *Id.* § 3126(a)(8).

The victim, L.V., testified that in February 2015, when he was 13 years old, that he often went to Warris's home to hang out with her son, S.W. N.T., 3/8/16, at 82-88, 94. L.V. testified that on several occasions, Warris flashed her naked breasts at him, and occasionally at her son, while L.V. would visit her home. *Id.* at 90. L.V. testified that on February 11, 2015, while he was at Warris's home, he was left alone with Warris. *Id.* at 94. L.V. testified that Warris sat down next to him while he was watching television and began to touch and bite him. *Id.* at 96-98. Next, Warris pulled down L.V.'s pants and underwear, and began to suck on his penis. *Id.* at 98-101. This continued for approximately five minutes. *Id.* at 101.

L.V.'s testimony is sufficient to sustain each of Warris's convictions. *See* 18 Pa.C.S.A. § 3106 (noting that "the testimony of a victim need not be corroborated in prosecutions under this chapter."); *see also Commonwealth v. Bishop*, 742 A.2d 178, 189 (Pa. Super. 1999) (stating that the uncorroborated testimony of a victim alone is enough to sustain convictions for sexual offenses.). Thus, the evidence, when reviewed in the

light most favorable to the Commonwealth, is sufficient to sustain Warris's convictions, and Warris's first claim is without merit.

In her second claim, Warris challenges the discretionary aspects of her sentence. *See* Brief for Appellant at 11, 16-20.

> An appellant challenging the discretionary aspects of the sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider or modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> \*\*\*

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Warris filed a timely Notice of Appeal, raised her claims in a timely Post-Sentence Motion, and included a Rule 2119(f) statement in her brief. Further, Warris's claims that (1) the trial court failed to offer specific reasons for the aggravated-range sentence, and (2) did not consider any mitigating circumstances each raise a substantial question. *See*

***Commonwealth v. Booze***, 953 A.2d 1263, 1278 (Pa. Super. 2008) (stating that "an allegation that the court failed to state adequate reasons on the record for imposing an aggravated-range sentence … raises a substantial question for our review."); ***see also Commonwealth v. Rhodes***, 8 A.3d 912, 919 n.12 (Pa. Super. 2010) (noting that "a substantial question exists when a sentencing court imposed a sentence in the aggravated range without considering mitigating factors.").   Thus we will review Warris's sentencing claim.

> Our standard of review is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context and abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgement for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Mastromarino***, 2 A.3d 581, 589 (Pa. Super. 2010) (citation omitted).

At Warris's sentencing hearing, the court considered Warris's pre-sentence investigation report.  ***See*** N.T., 6/14/16, at 4; ***see also Rhodes***, 8 A.3d at 919 (noting that where "the sentencing court had the benefit of a pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (citation and quotation marks omitted); ***Commonwealth v. Downing***, 990

- 10 -

A.2d 788, 794 (Pa. Super. 2010) (stating "where a trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed") (citations and quotation marks omitted). The trial court also considered the sentencing guidelines, the impact on the victim, that the victim was completely vulnerable due to his age and his relationship to Warris, that Warris has shown no remorse and takes no responsibility for her actions, and that Warris is a sexual predator and a danger to the community. N.T., 9/6/16, at 6-9, 10-11, 17-18; *see also* Trial Court Opinion, 9/6/16, at 16-17. Further, the trial court considered the pre-sentence memorandum from Warris and all relevant attachments. N.T., 9/6/16, at 4, 10-11. Thus, we conclude that there was no abuse of discretion in the trial court's sentence. ***See Commonwealth v. Sheller***, 961 A.2d 187, 191-92 (Pa. Super. 2008) (stating that the trial court did not abuse its discretion in imposing a sentence beyond the aggravated range where the court considered the pre-sentence investigation report, sentencing guidelines, protection of public, and appellant's rehabilitative needs); ***see also Commonwealth v. Perry***, 883 A.2d 599, 603 (Pa. Super. 2005) (stating that a trial court may, in its discretion, impose sentences consecutively or concurrently).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017