J-S16045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| v. | : | |
| | : | |
| JOSEPH PAUL STALTER | : | |
| | : | |
| Appellant | : | No. 895 MDA 2017 |
| | : | |

Appeal from the Judgment of Sentence April 30, 2014
in the Court of Common Pleas of York County
Criminal Division at No.:  CP-67-CR-0004612-2013

BEFORE:   BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                                **FILED JULY 20, 2018**

Appellant, Joseph Paul Stalter, appeals from the judgment of sentence entered in the York County Court of Common Pleas following his conviction by a jury of involuntary deviate sexual intercourse by threat of forcible compulsion,[1] involuntary deviate sexual intercourse with a child (less than thirteen years of age),[2] indecent assault without complainant's consent,[3]

_____

[1] 18 Pa.C.S.A. § 3123(a)(2).

[2] 18 Pa.C.S.A. § 3123(b).

[3] 18 Pa.C.S.A. § 3126(a)(1).

_____

*   Retired Senior Judge assigned to the Superior Court.

corruption of minors,[4] and terroristic threats.[5] The jury acquitted Appellant of aggravated indecent assault of a child. The court imposed an aggregate sentence of not less than ten nor more than twenty years of incarceration in a state correctional institution. Appellant did not file a post-sentence motion. On appeal, this Court affirmed judgment of sentence and our Supreme Court denied allowance of appeal. Pursuant to that appeal, the trial court filed a Rule 1925(a) opinion. (**See** Trial Court Opinion, 6/25/14) y; **see also** Pa.R.A.P. 1925.

This appeal follows the court's permission to file a post-sentence motion (*nunc pro tunc*), and the court's subsequent denial of that motion. On appeal, Appellant challenges the sufficiency and the weight of the evidence. We affirm on the basis of the trial court opinions.

In its opinions, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here. For the convenience of the reader, we note briefly that the complainant, K.K. (Victim), told family members and a friend that on two occasions, her mother's then-boyfriend forced her to perform oral sex and related acts, with the threat that he would harm her and her mother if she did not. Appellant also hit the Victim when she bit his penis to stop the

---

[4] 18 Pa.C.S.A. § 6301.

[5] 18 Pa.C.S.A. § 2706(a)(1).

oral sex. The Victim was between nine and ten years of age at the relevant times. Her mother was away working at a third shift job when the incidents occurred. When the Victim told other family members, they called the police.

Appellant presents three questions for our review:

> I. Whether the trial court erred in concluding that the jury's finding of guilty on the charges of Involuntary Deviate Sexual Intercourse, Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years Old, Indecent Assault and Corruption of Minors was sufficient based on the evidence presented at trial, as it relates to K.K.?
>
> II. Whether the trial court erred in concluding that the jury's finding of guilty on the charges of Involuntary Deviate Sexual Intercourse, Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years Old, Indecent Assault and Corruption of Minors was not against the weight of the evidence presented at trial, as it relates to K.K.?
>
> III. Whether the trial court erred in concluding that the jury's finding of guilty on the charge of Terroristic Threats was not against the weight and sufficiency of the evidence presented at trial, as it relates to K.K.?

(Appellant's Brief, at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the trial court, we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinions properly dispose of the questions presented. (*See* Trial Court Opinion, 7/11/17, at 4-11; (*see also* Trial Ct. Op., 6/25/14, at 1-8) (concluding: (1) uncorroborated testimony of complaining witness, if believed by jury, is sufficient to convict Appellant of sexual offenses; (2) Commonwealth proved all elements of every count for which jury convicted

- 3 -

Appellant, beyond a reasonable doubt; (3) jury found Victim credible; and (4) weight of evidence was not so contrary as to shock trial court's sense of justice). Accordingly, we affirm on the basis of the trial court's opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/20/2018

RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER

2014 JUN 25 AM 10: 18

DON O'SHELL
CLERK OF COURTS

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA CRIMINAL DIVISON

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | No. CP-67-CR-0004612-2013 |
| | : | |
| vs. | : | |
| | : | Super. Ct. No. 807 MDA 2014 |
| Joseph Stalter | : | |
| | : | |

## OPINION PURSUANT TO RULE 1925(a) OF PENNSYLVANIA APPELLATE PROCEDURE

On January 24, 2014, a jury found Joseph Stalter, Appellant, guilty of Involuntary Deviate Sexual Intercourse,[1] Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years Old,[2] Indecent Assault,[3] Corruption of Minors,[4] and Terroristic Threats.[5] On April 30, 2014, Appellant was sentenced to 10-20 years of imprisonment.

Appellant filed a timely appeal to the Superior Court on May 6, 2014. On May 7, 2014, this court directed the Appellant to file a Concise Statement of the Matters Complained Of On Appeal. The Statement was timely filed on May 16, 2014.

In his appeal, Appellant argues that the evidence was insufficient to support the jury's verdict as to all charges in that the alleged victim's testimony was self contradictory; the victim's testimony was contradicted by other evidence; and the alleged victim's testimony was vague as to material facts. The evidence presented to the jury can be found in the original record at Notes of Testimony 1/23-1/24/2014.

---

[1] 18 Pa. C.S.A. § 3123(a)(2).
[2] 18 Pa. C.S.A. § 3123(b).
[3] 18 Pa. C.S.A. § 3126(a)(7).
[4] 18 Pa. C.S.A. § 6301(a)(1).
[5] 18 Pa. C.S.A. § 2706(a)(1).

1

Pursuant to Pennsylvania Rule 1925(a) of Appellate Procedure, the following is our opinion regarding the sufficiency of the evidence presented by the Commonwealth.

**Factual and Procedural History:**

Between the time K████ K████ was in sixth and eighth grade, she was twice forced to engage in sexual acts with her mother's boyfriend, Joseph Stalter, the Appellant. (N.T. 1/23-1/24/2014 at 88, 114). These acts occurred at the home they all shared, which was located on Davidsburg Road, York County. (Id. at 88). There was no physical evidence to demonstrate that the Appellant sexually assaulted the victim, but the Commonwealth did present testimony from the victim, K████ K████; the victim's mother, Lorena K████; the victim's sister, K████ K████; and the victim's friend, J████ D████.

K████ testified that the first incident occurred when the Appellant, after drinking, came into her room in the early morning hours while her mother was at work. (N.T. 1/23-1/24/2014 at 92). He laid on her bed and told her to take her clothes off. (Id.). As the Appellant began to take his clothes off, K████ began to cry and wonder what was happening. (Id.). The Appellant touched K████'s breast and around her vagina, and made her touch his penis with her hands and mouth. (Id.). In order to make K████ comply with his requests, the Appellant grabbed her arms tight enough to leave bruises and told her that if she did not comply he would hurt her. (Id. at 93). After the Appellant ejaculated, he remained in her bed for approximately half an hour while K████ continued to cry. (Id. at 93-94). In response to her crying, the Appellant told her to shut up, not to tell anyone, and if she did, that he would hurt her and her mother, Lorena. (Id. at 94). K████ testified that she believed the Appellant meant what

2

he was saying because he had "smacked her around" before, and had put holes in the walls and kitchen appliances on previous occasions. (Id.). K▮▮▮ was in sixth grade at the time. (Id. at 90).

Although K▮▮▮ was not able to give an exact date, she was able to recall that the second incident happened months after the first. (N.T. 1/23-1/24/2014 at 95). She had just gotten out of the shower and returned to her room when the Appellant came out of her closet. (Id.). He demanded that K▮▮▮ pull his pants down and perform oral sex on him. (Id.). While K▮▮▮ was complying with the Appellant's request, she testified that she bit his penis because she wanted the encounter to end. (Id. at 96). The Appellant slapped her across the face and called her "a slut and a whore and a bitch." (Id.). During both incidents, K▮▮▮'s mother was not in the home, she and the Appellant were the only people in the home. (Id. at 105, 108).

K▮▮▮ testified that a year or so after the second incident she told her friend from school, J▮▮▮ D▮▮▮, that the Appellant had molested her. (N.T. 1/23-1/24/2014 at 98). She stated that she ended up telling J▮▮▮ because she just wanted to talk about it with someone. (Id.). Some time after telling J▮▮▮, K▮▮▮ had an argument with her aunt. (Id. at 99). During this argument, K▮▮▮ told her aunt what happened between her and the Appellant in order to explain why she acts the way she does. (Id.). K▮▮▮'s grandmother was also present during this interaction, and she subsequently called the police. (Id.).

On cross-examination, K▮▮▮ attempted to clarify the timeline of events, but had some trouble. She testified that she was born on August ▮▮ 1997. (N.T. 1/23-1/24/2014 at 100). She again stated that the incidents occurred in the Davidsburg Road home, and that she was nine or ten, which would have been between 2006 and 2008. (Id.). K▮▮▮ testified that she moved out of the house when she was thirteen,

3

which would have been in 2010, and that she had no contact with Appellant after that time. (Id. at 102). Aside from telling J███ about a year after the second incident, K███ admitted that she did not tell anyone until February of 2013. (Id. at 104). K███ stated that she had bruises and red marks from when the Appellant hit her, and that she did see her mother shortly thereafter. (Id. at 107-09). K███ was also unsure whether her sister K███ K███ lived in the house at the time the incidents occurred, but she ultimately testified that K███ did not live in the home at that time. (Id. at 101-02). Lastly, K███ freely admitted that she did not like the Appellant from the moment he and her mother began dating. (Id. at 110).

Because K███ had moved so much, on redirect she was able to pin down a more concrete timeline by using grade level as an indicator. The first time she lived with her mother and the Appellant, in Dover, she was in third or fourth grade. (N.T. 1/23-1/24/2014 at 112). She later moved out and lived with her uncle when she was in fifth grade. (Id.). She moved back in with her mother and the Appellant into the home on Davidsburg Road when she was in sixth grade. (Id. at 113). Finally, K███ moved in with her father and her grandmother the summer after finishing her eighth grade year. (Id.). So, using grade levels, K███ was able to testify that the incidents occurred between sixth and eighth grade. (Id. at 114).

The Commonwealth's next witness was Lorena K███, K███'s mother and the Appellant's ex-girlfriend. (N.T. 1/23-1/24/2014 at 116-17). Ms. K███ began dating the Appellant in 2004. (Id. at 117). She and the Appellant lived in Dover, Pennsylvania, until 2009 when they moved into a home on Davidsburg Road in York in 2010. (Id.). Ms. K███ testified that while living in that home she was working third shift at Frito-Lay. (Id. at 118). However, she lost her job because she accumulated too many points for being absent. (Id.). She testified that she accumulated all these points

4

because K█████would often ask her to stay home from work. (Id. at 118-19). At this point in time, the Appellant and Ms. K████were not sharing a bedroom, so on the nights that she would stay home from work, K████ would sleep her in bedroom. (Id. at 119). On the nights that Ms. K████ would go into work, she testified that K████ would appear sad. (Id. at 121). She also stated that one time the Appellant approached her asking her to tell K████ not to keep her door locked at night. (Id.). According to Ms. K████, the Appellant said this was a problem because he would not be able to get to K████ if there was a fire or some other kind of emergency. (Id. at 121-22).

Aside from K████ always sleeping in her bedroom on the nights she was home, Ms. K████ also testified that K████ began to show signs of depression, and she started failing in school. (N.T. 1/23-1/24/2014 at 122). She was particularly aware of K████'s declining school performance because, up until that point, K████ had loved and done well in school. (Id.). On cross-examination, Ms. K████ admitted that she never noticed anything "off" between the Appellant and K████. (Id. at 124). She also stated that she never saw any marks on K████, but that she did notice her daughter would cry for a long time on some days. (Id. at 125). Lastly, when asked about the dates she lived in the Davidsburg Road home, she testified that she was not sure of the dates, and could have been wrong. (Id. at 124).

Next, the Commonwealth called K████ K████, the victim's sister, to the stand. (N.T. 1/23-1/24/2014 at 127-28). K████ testified that she believed she lived in the Davidsburg Road home from late 2008 and early 2009, and came back for a short period of time in 2010. (Id. at 128-29). While living in the home, she noticed that the Appellant drank a lot and was very grumpy. (Id. at 129). Although K████ never witnessed any inappropriate interactions between the Appellant and K████, she did recount one night when K████ came to sleep in her bedroom. (Id. at 129-30). K████

5

testified that K██████ came into her room trembling and that she was scared. (Id. at 130). Shortly after K████ entered the room, the Appellant came in apologizing over and over again. (Id. at 129-30). When K████ asked him what he was sorry for, the Appellant said that he was sorry and that he "won't do it again." (Id. at 131). K██████ became so annoyed with the whole episode that when the Appellant entered for a fourth or fifth time she threatened to call the police. (Id. at 129-30).

On cross-examination, K██████ testified that she remembered talking to Detective Hine about the case, but she did not remember if she told him that K██████ was trembling when she came into her bedroom. (N.T. 1/23-1/24/2014 at 135). She also could not remember if she had told the Detective that beyond apologizing, the Appellant said he would not do it again. (Id. at 135-36).

J██████ D██████ testified next. At the time of the incident, she was K██████'s best friend, but J██████ testified that she and K██████ had grown apart. (N.T. 1-23/1-24/2014 at 139). J██████ stated that one day, while talking about why K██████ moved out of her mother's house, K██████ told her that the Appellant had molested her. (Id. at 140-41). J██████ did not ask any follow up questions because K██████ became visibly upset, so she tried to steer the conversation in another direction. (Id. at 141). After this initial exchange, J██████ testified that K██████ mentioned it in passing on one other occasion. (Id. at 142). While playing in the woods at K██████'s cousin's house, J██████ remembered that K██████ mentioned something about the Appellant, but could not remember the specifics. (Id. at 142-43).

On cross-examination, J██████ testified that she did receive a phone call from Detective Hine asking her to speak with him in regard to K██████ K██████. (N.T. 1/23-1/24/2014 at 144). Although she told the detective that K██████ told her something about the Appellant, J██████ admitted that she did not tell Detective Hine that K██████

6

had told her the Appellant molested her. (Id. at 145). However, Jessica stated that she did not tell the detective because it was over the phone and she did not want to give out details to a stranger. (Id. at 145). After being pressed on the issue, though, J██████ stated that the person on the phone identified himself as a police officer, and that she did believe him to be a police officer. (Id. at 146). J█████ also did not tell the detective about the conversation at K███'s cousin's house. (Id.).

The Commonwealth rested and the Appellant decided not to testify, but the defense did call Detective Hine and four character witnesses. Detective Hine had been employed with the Northern York Regional Police Department for twelve years, and was the detective who investigated the allegations made against the Appellant. (N.T. 1/23-1/24/2014 at 149-50). Detective Hine testified that during, or shortly after, interviewing a witness, he prepares a written report. (Id. at 151). When asked about his interview with K████K████, Detective Hine testified that his reports do not indicate K████ told him that K████ came into her room trembling, or that the Appellant said he would never do "it" again. (Id. at 152-54).

With respect to his phone interview of J██████ D█████, Detective Hine stated that he identified himself as a police officer, but J█████ was still reluctant to give him details. (Id. at 154-55). Detective Hine stated that J██████ never told him that K████ stated she had been molested by the Appellant, but that J█████ did tell him that K████ had said something about the Appellant, she just could not remember what it was. (Id. at 155). Detective Hine also testified that J█████ did not tell him about the later conversation in the woods. (Id.). Lastly, Detective Hine stated that when he interviewed the Appellant, the Appellant denied all the allegations against him. (Id. at 155-56).

7

On cross-examination by the Commonwealth, Detective Hine clarified that his reports are not verbatim, and that he does paraphrase what is said in the interviews. (N.T 1/23-1/24/2014 at 156). With respect to his interview with J█████, Detective Hine testified that he was also reluctant to give details about the allegations over the phone, but that he believed he told J█████ that he was calling regarding some type of sexual offense. (Id. at 156-57).

The defense then called Bobby Shull, Mark Hoover, Karen Bickings, and Rafael Resto as character witnesses. They each testified that they had known the Appellant for 28-30 years, 10 years, 23 years, and 20 years respectively. (N.T. 1/23-1/24/2014 at 158-60, 162-63). Each of them testified that they had never heard a negative comment regarding the Appellant's conduct around children. (Id. at 159-63).

The defense rested, and after closing arguments, the jury was instructed on all counts, which included Involuntary Deviate Sexual Intercourse, Involuntary Deviate Sexual Intercourse with a Child, Aggravated Indecent Assault of a Child, Indecent Assault, Corruption of Minors, and Terroristic Threats. The jury was sent to deliberate, and subsequently returned a verdict of guilty on all counts with the exception of Count 3, Aggravated Indecent Assault. (N.T. 1/23-1/24/2014 at 227-28).

The Appellant was sentenced on April 30, 2014. On May 6, 2014, the Appellant filed his timely notice of appeal, and this court instructed the Appellant to file a concise statement of the matters complained thereof on May 7, 2014. Appellant filed his Rule 1925(b) statement on May 16, 2014.

**Issues:**

I.    Was the evidence insufficient to support the jury's guilty verdict on the counts of:

    a.  Involuntary Deviate Sexual Intercourse

    b.  Involuntary Deviate Sexual Intercourse with Child less than 13

    c.  Indecent Assault

    d.  Corruption of Minors

    e.  Terroristic Threats

**Discussion:**

The Appellant argues that the evidence is insufficient to support his conviction because (1) the victim's testimony was self-contradictory, (2) the victim's testimony was contradicted by other evidence, and (3) the victim's testimony was vague as to material facts. An appellate court reviewing whether the evidence is sufficient to support the jury's verdict is a question of law, and the appellate court will review the evidence de novo. *Commonwealth v. Lynn*, 83 A.3d 434, 447 (Pa. Super. Ct. 2013). The evidence will be insufficient as a matter of law when:

> the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly

9

circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887. 889-90 (Pa. Super. Ct. 2011).

With respect to the counts of Involuntary Deviate Sexual Intercourse and Indecent Assault, the testimony of the victim, if the jury finds it believable, does not need to be corroborated by any other evidence, and is sufficient. 18 Pa. C.S.A. § 3106.

*Counts 1 & 2, Involuntary Deviate Sexual Intercourse:*

The Appellant was found guilty of Involuntary Deviate Sexual Intercourse under 18 Pa. C.SA. § 3123(a)(2). A person is guilty of that crime if he "engages in deviate sexual intercourse with a complainant . . . (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa. C.S.A. § 3123(a)(2). Deviate sexual intercourse is defined as including "penetration, however slight, of the genitals or anus of another person . . . for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa. C.S.A. § 3101. Forcible compulsion is defined as "compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa. C.S.A. § 3101.

Although there were some inconsistencies in the victim's testimony, a reasonable jury could have believed her testimony. The victim did have trouble pinpointing the timeframe of events, but she was able to offer what grades she was in as a reference. If the jury believed her testimony, then that alone is sufficient to support a conviction of Involuntary Deviate Sexual Intercourse because the victim's testimony established every element of the offense. 18 Pa. C.S.A. § 3106; *Commonwealth v. Jette*, 818 A.2d 533 (Pa. Super. Ct. 2003).

The victim's testimony was sufficient to prove every element of the offense of Involuntary Deviate Sexual Intercourse. First, the victim testified that the Appellant touched her breasts and around her vagina, and also made her perform oral sex on him twice. (N.T. 1/23-1/24/2014 at 92, 95). Deviate sexual intercourse includes oral sex, which means penetration can be established by some oral contact, by either mouth or tongue. *Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. Ct. 2003). Second, the victim stated that she was scared to tell anyone because the Appellant had threatened to harm her and her mother. (Id. at 94). As mentioned above, forcible compulsion can be express or implied. Here, if the victim's testimony is to be believed, the Appellant expressly threatened to harm her and her mother if she told anyone what happened. (Id.). The victim testified that she believed the Appellant because he would often get drunk and angry and punch holes in walls. (Id.). This testimony, if believed by the jury, is sufficient to establish the elements of Involuntary Deviate Sexual Intercourse under 18 Pa. C.S.A. § 3123(a)(2).

The victim's testimony is also sufficient to support the conviction of Count 2, Involuntary Deviate Sexual Intercourse with a Child under 18 Pa. C.S.A. § 3123(b). A person is guilty of this crime when that person "engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa. C.S.A. § 3123(b). As previously stated, the victim testified that the first incident occurred when she was in sixth grade, when she was approximately eleven years old. (N.T. 1/23-1/24/2014 at 90-91). Further, the victim testified that she moved out of the house when she was thirteen, and had no contact with Appellant after that time. (Id. at 109, 113). Again, if the victim is to be believed, this would establish that she was under the age of 13 when the Appellant forced her to perform oral sex.

11

However, the jury had more testimony to help it decide whether the victim's allegations were true. The Commonwealth presented testimony from the victim's mother, Lorena, who stated she noticed a difference in her daughter's mood and her grades began to drop. (N.T. 1/23-1/24/2014 at 122). Also, on the nights she did not work, Lorena testified that her daughter would sleep in her bedroom. (Id. at 119). Her daughter asked her to stay home so much, that Lorena eventually lost her job for having too many absentee points. (Id. at 118-19). Lastly, Lorena testified that although she did not notice anything unusual between her daughter and the Appellant, the Appellant did approach her about K█████locking her bedroom door at night. (Id. at 121). According to Lorena, the Appellant wanted K████ to keep her door unlocked in case he needed to get her in an emergency. (Id. at 121-22). A reasonable jury could have viewed Lorena's testimony as giving credence to the victim's testimony.

Further, the jury was presented with testimony from K█████, the victim's sister. Although she did not live in the home for long, K█████ told the jury that one night her sister came into her room trembling. (N.T. 1/23-1/24/2014 at 130). While the two were sleeping, the Appellant came in numerous times apologizing over and over again. (Id.). K█████ kept asking him what he was apologizing for and the Appellant responded that he "won't do it again." (Id. at 131). Even though K█████ testified she did not know what the Appellant was talking about, or why her sister was so frightened, a reasonable jury could find that this testimony bolstered the victim's testimony.

12

*Count 3, Aggravated Indecent Assault of a Child:*

The jury found the Appellant not guilty of Aggravated Indecent Assault, so a discussion of the evidence is not needed.

*Count 4, Indecent Assault:*

A jury can find an individual guilty of Indecent Assault if it finds that that individual has "indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire and. . . (7) the complainant is less than 13 years of age." 18 Pa. C.S.A. § 3126(a)(7). Indecent contact is defined by "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa. C.S.A. § 3101.

Again, the victim testified that the Appellant touched her breasts and around her vagina, and then forced her to touch his penis with her mouth and hands. (N.T. 1/23-1/24/2014 at 92). This testimony would satisfy the indecent contact element because the Appellant caused the victim to touch his intimate parts for the purpose of sexual gratification. Further, the victim testified that she was in sixth grade, around eleven years old, when the incidents occurred, which would make her under the age of thirteen as required by the last part of the statute. A reasonable jury could have found the victim's testimony credible. Because this is a sexual offense, the victim's testimony alone, if believed by the jury, is sufficient. 18 Pa. C.S.A. § 3106.

Even though the victim's testimony alone is sufficient, the same testimony from Lorena and K█████ K█████ restated above could have led to the jury to give more credibility to the victim's testimony.

13

*Count 5, Corruption of Minors:*

A person is guilty of Corruption of Minors if he is eighteen years or older and "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age." 18 Pa. C.S.A. § 6301(a)(1)(ii). To establish whether actions tend to corrupt, the fact finder should determine if the actions in question "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Commonwealth v. Snyder*, 870 A.2d 336, 351 (Pa. Super. Ct. 2005). The Appellant was over the age of eighteen at the time of the offense because his birthday is January 31, 1971, making him over eighteen at all relevant times. (N.T. 1/23-1/24/2014 at 91). If the jury found the testimony of the victim and the witnesses true, then it is clear that the actions the Appellant forced the victim to engage in are of a nature which most people would find offensive to their common sense of decency.

*Count 6, Terroristic Threats:*

A jury can find an individual guilty of terroristic threats if "the person communicates, either directly or indirectly, a threat to (1) commit any crime of violence with intent to terrorize another." 18 Pa. C.S.A. § 2706(a)(1). In the present case, the victim testified that the Appellant threatened to hurt her and her mom if she told anyone what happened. (N.T. 1/23-1/24/2014 at 94). The victim testified that she believed his threats because the Appellant would get drunk and angry and punch things. (Id.). K█████, the victim's sister, also testified that the Appellant was very grumpy and would drink a lot. (Id. at 129). This testimony, if believed, establishes that the Appellant communicated a threat to commit a violent crime, battery, with the intent to terrorize, scare the victim so she would not tell.

14

## Conclusion:

Although there are some inconsistencies in the victim's testimony, this alone does not establish that there was insufficient evidence to convict the Appellant. The victim was a young girl at the time of the incidents and requiring her to pinpoint specific dates of the incidents is unrealistic. She was a little confused on years, but when asked about grade levels, her testimony was consistent as to what grade she was in when the incidents occurred. Further, the claim that the victim's testimony was contradicted by other evidence is also without merit. Like the victim, other witnesses had trouble giving specific years, but none of the evidence presented contradicted the victim's testimony to such a degree that would warrant a finding that the evidence presented was insufficient to support the jury's verdict. Lastly, the victim's testimony was sufficiently specific with respect to all the material facts to support a conviction on each count. Again, she may have been a little confused on actual years, or who lived in the house at the time, but this does not make her testimony vague as to the material facts underlying each element of each count.

We conclude there was no error in the jury's verdict.

By the Court:

_____
Richard K. Renn, Judge

Date: 6/25/14

15

# IN THE COURT OF COMMON PLEAS YORK COUNTY PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     : Docket No. CP-67-CR-4612-2013

                              :

v.                              : 895 MDA 2017

                              :

JOSEPH STALTER                        :

      *Defendant*                    :

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

This matter is before the Court again on Defendant's appeal of our order of May 3, 2017, denying post-sentence motions filed by Defendant. The motions were filed as a result of a PCRA proceeding which resulted in an April 24, 2017 order granting relief and permitting Defendant to file the post-sentence motions.

## FACTUAL AND PROCEDURAL HISTORY:

On January 24, 2014, the Defendant, Joseph Stalter, was convicted, after a trial by jury, of Involuntary Deviate Sexual Intercourse[1], Involuntary Deviate Sexual Intercourse less than 13 years of age[2], Indecent Assault[3], Corruption of

---

[1] 18 Pa.C.S.A. § 3123(a)(2)
[2] 18 Pa.C.S.A. § 3123(b)
[3] 18 Pa.C.S.A. § 3126(a)(1)

1

Minors[4], and Terroristic Threats[5], and acquitted on the charge of Aggravated Indecent Assault of a Child, after a jury trial prosecuted by Assistant District Attorney Stephen R. McDonald, Esq., at which the Defendant was represented by J. Richard Robinson, Esq. On April 30, 2014, Defendant was sentenced to serve 5-10 years' incarceration on the involuntary deviate sexual intercourse count, 10-20 years' incarceration on the involuntary deviate sexual intercourse less than 13 years of age count, 1-2 years' incarceration on the indecent assault count, 12 months of probation for the corruption of minors count, and 12 months of probation for the terroristic threats count. All counts were set to run concurrently to one another, giving the Defendant a total aggregate sentence of 10 to 20 years' incarceration.

On May 6, 2014, Defendant, through counsel, filed a Notice of Appeal to the Superior Court. On April 24, 2015, the Superior Court denied Defendant's appeal. On June 1, 2015, Defendant filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On October 27, 2015, the Pennsylvania Supreme Court denied Defendant's petition for an appeal.

On October 25, 2016, Defendant filed his first PCRA petition, pro se. On October 28, 2016, the Court appointed T. Korey Leslie, Esq. as counsel for the

---

[4] 18 Pa.C.S.A. § 6301(a)(1)
[5] 18 Pa.C.S.A. § 2706(a)(1)

2

Defendant's case. On April 24, 2017, we issued an order granting Defendant's PCRA petition and permitted Defendant to file post-sentence motions. On May 1, 2017, Defendant filed a motion for post-sentence relief pursuant to Pennsylvania Rule of Criminal Procedure 720. On May 3, 2017, we denied Defendant's post-sentence motion.

On June 2, 2017, Defendant filed a Notice of Appeal to the Superior Court. On June 6, 2017, we issued an order directing Defendant to file a statement of errors complained of pursuant to Pa.R.A.P. 1925(b). On June 26, 2017, Defendant filed the 1925(b) statement.

For a more complete factual and procedural history of this case, the Court references its previous 1925(a) Opinion filed in this case on June 25, 2014, pages 1 through 8.

## ISSUES:

The Defendant alleges three issues in his PCRA petition.

a) The Defendant avers that the evidence presented by the Commonwealth at trial was not sufficient to support the convictions handed down by the jury. The Defendant notes the lack of physical evidence to corroborate the allegations of sexual assault to support the convictions for the offenses of Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years of Age, Indecent Assault, and Corruption of Minors.

3

b) The Defendant avers that his conviction was against the weight of the evidence presented at trial. The Defendant avers the victim's testimony was not credible and was contradicted by the testimony of other witnesses who testified at trial. As such, the testimony of the victim should not have been relied upon by the jury to convict the Defendant of Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years Old, Indecent Assault, and Corruption of Minors as the weight of the evidence was in the Defendant's favor.

c) The Defendant avers that his conviction for Terroristic Threats was against the weight and the sufficiency of the evidence presented at trial. Specifically, the Defendant avers the Commonwealth did not present sufficient evidence to convict him of Terroristic Threats where the evidence presented at trial did not prove beyond a reasonable doubt that the Defendant intended to terrorize the victim with a threat of violence. Further, the testimony of the victim should not have been relied upon by the jury where it was not corroborated by other testimony and the jury's reliance upon the testimony was improper in light of the other evidence presented at trial.

## DISCUSSION:

### Sufficiency of the Evidence

Defendant's first and third issues argue that the evidence was insufficient to convict him of Involuntary Deviate Sexual Intercourse with Child less than 13 Years of Age, Indecent Assault, Corruption of Minors, and Terroristic Threats. Defendant specifically alleges there was a lack of physical evidence presented to support these convictions by the jury. We will consolidate the sufficiency of the evidence arguments in issues one and three into one argument.

The standard of review for an appellate court reviewing a sufficiency of the evidence claim is well settled:

4

'The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.'

*Commonwealth v. Charlton*, 902 A.2d 554, 563 (Pa. Super. 2006) (*quoting Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

This Court has previously addressed the sufficiency of the evidence of all charges in its 1925(a) Opinion filed June 25, 2014. For a review of the sufficiency of the evidence on Involuntary Deviate Sexual Intercourse, please see this Court's 1925(a) Opinion, June 25, 2014, pages ten through twelve. For a review of the sufficiency of the evidence on Indecent Assault, please see same opinion, page thirteen. For a review of the sufficiency of the evidence on Corruption of Minors, please see same opinion, page fourteen. For a review of the sufficiency of the evidence on Terroristic Threats, please see same opinion, page fourteen.

In regards to Defendant's argument that there was a lack of physical evidence to corroborate the charges, the Court notes that "it is well-established that the

5

'uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" *Commonwealth v. Castelhun*, 889 A.2d 1228, 1233 (Pa. Super. 2005) (quoting *Commonwealth v. Bishop*, 742 A.2d 178, 189 (Pa. Super. 1999).

The Court finds that the Commonwealth proved all of the elements of every count Defendant was convicted of beyond a reasonable doubt. The testimony of the victim provided all of the necessary facts needed to prove all of the elements and the jury was free to believe all, part, or none of the victim's testimony. Therefore, in viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to convict Defendant of Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years Old, Indecent Assault, Corruption of Minors, and Terroristic Threats.

*Weight of the Evidence*

Defendant's second issue argues that his conviction was against the weight of the evidence presented at trial. Defendant argues that the victim's testimony was not credible and was contradicted by the testimony of other witnesses. The Court disagrees.

6

"The finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." *Commonwealth v. Sanchez*, 36 A.3d 24, 26-27 (Pa. 2011); *citing Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). "A challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict. *Id.*; citing *Commonwealth v. Blakeney*, 946 A.2d 645, 652-53 (Pa. 2008). "The trial judge may not grant relief based merely on 'some conflict in testimony or because the judge would reach a different conclusion on the same facts.'" *Id*; *Blakeney*, 946 A.2d at 653. "Relief on a weight of the evidence claim is reserved for 'extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that the right may be given another opportunity to prevail." *Id.* "On appeal, [the] Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight." *Id.*; *DeJesus*, 860 A.2d at 107. "[The appellate court's] review is limited to determining whether the trial court abused its discretion; the Court's role precludes any *de novo* consideration of the underlying weight question." *Id.*; citing *Commonwealth v. Vandivner*, 962 A.2d 1170, 1178 (Pa. 2009).

This case was tried before a jury for two days on January 23, 2014 and January 24, 2014. The Commonwealth presented testimony from the victim, K████ K███, the victim's mother, Lorena K████, the victim's sister, K████ K███, and one of the victim's friends, J████ D████. The Defense called Detective Hine and four character witnesses for Defendant: Bobby Shull, Mark Hoover, Karen Bickings, and Rafael Resto.

K████ K████'s testimony began on page 87 of the first day of trial and ended on page 116. K████ K███ did not recall specific dates when the two assaults occurred; initially saying she was nine or ten years old when Defendant assaulted her. (Notes of Testimony, 01/23/2014, p. 88.) On redirect, K████ K███ stated the assaults happened between sixth and eighth grades because that is when she was living with the Defendant. *Id.* at 113-14. K████ K███ was able to give specific details of both assaults when she testified. For the first assault, K████ testified that Defendant came into her room, laid on the bed, touched her breasts and around her vagina, and made her touch his penis. *Id.* at 91-92. K████ remembered that Defendant grabbed her arms tightly and told her that he would hurt her if she didn't do what he wanted. *Id.* at 93. In addition, there were specific details about the Defendant lying in bed with her after the assault for a half an hour and that the assault happened at 1:00 a.m. *Id.*

8

For the second assault, K███ remembered specific details about getting out of the shower, the Defendant hiding in the closet in her room, and the fact that Defendant was wearing his work shirt and sweatpants. *Id.* at 95-96. K███ testified that she was forced to give Defendant oral sex and bit Defendant on his penis to make the assault stop. *Id.* at 96. K███ also remembered that Defendant slapped her across the face for biting him and called her: "slut", "whore" and "bitch." *Id.*

Finally, K███ was very specific that there were only two assaults that occurred and gave specific details of what happened during those two assaults. *Id.* at 97. The Court finds that the testimony given by K███ K███ is enough that a jury could find her testimony to be credible.

The testimony of other witnesses in the case did not contradict K███ K███'s testimony, but rather provided evidence of Defendant's conduct around K███. K███ testified that her mother, Lorena K███, worked third shift at Frito Lay when the first assault happened. *Id.* at 105. Lorena K███ testified that she was fired from this job at Frito Lay because K███ would ask her to stay home from work and she accumulated too many absent points. *Id.* at 118-19. Lorena also testified that Defendant approached her about K███ locking her bedroom door and that K███ became depressed and was failing in school. *Id.* at 121-22.

9

K████'s sister, K████ K████, testified that K████ came into her room one night and appeared to be "really scared." *Id.* at 130. K████ had asked K████ if she could sleep with her that night because she didn't want to be alone. *Id.* at 130-31. After K████ came in, Defendant came into her room drunk and "kept apologizing and I didn't know what for." *Id.* at 129-30. K████ testified that Defendant came in four or five times that night, between midnight and about three or four in the morning, after K████ came into the room to sleep with K████ and only stopped after K████ threatened to call the police. *Id.* at 130-32.

K████'s friend, J████ D████, testified that K████ told her that Defendant "molested her" and began to get upset to the point where she "was on the brink of crying." *Id.* at 141-42.

Defense called Detective Michael Hine to the stand. Detective Hine testified about J████ D████'s reluctance to talk to the police about K████'s confession to her about Defendant. *Id.* at 154-55. Detective Hine also testified that when he interviewed K████ K████, she never told him that Defendant said to her: "I won't do anything any longer". *Id.* at 153. Defense also called four character witnesses, Bobby Shull, Mark Hoover, Karen Bickings, and Rafael Resto who all testified that they never heard anyone in the community make negative comments about Defendant's reputation for moral chastity around children. *Id.* at 159-163.

10

The jury was free to believe all, part, or none of all of the witness testimony in the case. The jury found K████ K███'s testimony was credible. The Court does not find that any of K████ K███'s testimony was contradicted in a manner that would cause this Court to find the verdict is against the weight of the evidence. The Court finds that the weight of the evidence is not so contrary as to shock our sense of justice. Therefore, the Court does not find that the Defendant is entitled to relief on his weight of the evidence claim.

**CONCLUSION:**

For the reasons stated above, and those we previously set forth in our pervious 1925 opinion, we respectfully submit that the Defendant's arguments on appeal are without merit.

Copies of this statement shall be sent to counsel for the parties.

BY THE COURT:

_____
Richard K. Renn, Judge

_____7/11/17_____
Date

11